UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

HENRY PLATSKY,

                Plaintiff,

-against-

NATIONAL SECURITY AGENCY,
CENTRAL INTELLIGENCE AGENCY,
and FEDERAL BUREAU OF
INVESTIGATIONS,

                Defendants.

------------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 7-1-16

15-cv-1529 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

*Pro se* plaintiff Henry Platsky served requests for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, on the National Security Agency ("NSA"), the Central Intelligence Agency ("CIA") and the Federal Bureau of Investigation ("FBI") (collectively, "the Agencies"). The Agencies responded in part with so-called *Glomar* responses, by which they neither confirmed nor denied the existence of the requested records. Platsky filed this action challenging the Agencies' responses. The Agencies and Platsky now cross-move for summary judgment. For the reasons set forth below, the Agencies' motion is GRANTED.

## BACKGROUND

I.     **Factual Background**

By letter dated March 4, 2014, Platsky sent a request for records to the NSA, the CIA, and the FBI. (App'x 1(a), Compl., ECF No. 2.) He included his full name, his date of birth, his social security number, and his address, and he wrote:

> This is a Freedom of Information Act request for any materials held by your agency that are either under my name or mention my name. This would include written and electronic

1                               **COPIES MAILED**

documents. The time framework for these documents would be from January 1, 2000 thru January 1, 2005.

(App'x 1(a), Compl.)

By letter dated March 24, 2014, the FBI responded to Platsky's request, indicating that it had searched its Central Records System and was unable to identify main files records responsive to Platsky's request. (App'x 1(b), Compl.) Invoking FOIA Exemption 7(E), the FBI then explained that the agency "neither confirms nor denies the existence of your subject's name on any watch lists." (App'x 1(b), Compl.)

By letter dated March 27, 2014, the NSA responded to Platsky's request. (App'x 1(e), Compl.) Invoking FOIA Exemption 1, the NSA denied Platsky's request because "the fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 13526." (App'x 1(e), Compl.) Invoking FOIA Exemption 3, the NSA denied Platsky's request because "the fact of the existence or non-existence of the information is exempted from disclosure." (App'x 1(e), Compl..)

Finally, by letter dated April 10, 2014, the CIA responded to Platsky's request, indicating that it had "searched for CIA-originated responsive records that might reflect an open or otherwise acknowledged Agency affiliation," but was "unable to locate any additional information or records responsive to [the] request," beyond those provided to Platsky in response to earlier requests. (App'x 1(h), Compl.) Invoking Exemptions 1 and 3, the CIA then explained that "[w]ith respect to responsive records that would reveal a classified connection to the CIA . . . the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request." (App'x 1(h), Compl..)

Platsky appealed each decision to the relevant agency, and each appeal was denied. (*See* App'x 1, Compl.)

## II.  Procedural Background

Platsky initiated this action on February 27, 2015, seeking an order requiring the agencies to "reveal and turn over all requested materials" that are older than ten years and to "reveal and turn over all requested materials that concern illegal covert operations." (Compl.) He also sought an order declaring the "Federal Bureau of Investigations Terrorist Watch Lists unconstitutional" and requiring the FBI to reveal whether his name appeared on the "now illegal No-Fly-List and the other Watch Lists" maintained by the FBI. (Compl.)

On April 7, 2015, the Hon. Loretta A. Preska issued an order dismissing *sua sponte* Platsky's suit. (Order of Dismissal, ECF No. 4 ("Preska Order").) Platsky had previously filed suit against the Agencies challenging their denial of his requests for records covering the period January 1, 2005, to January 1, 2010, and the Court in that action had granted summary judgment to the Agencies. *See Platsky v. Nat'l Sec. Agency*, No. 11 Civ. 4816, Docket No. 20 (E.D.N.Y. Jan. 30, 2013). The decision was later affirmed by the Second Circuit. *See Platsky v. Nat'l Sec. Agency*, 547 Fed. App'x 81, 82 (2d Cir. 2013). Based on that history, Judge Preska found that the current action was blocked by collateral estoppel, and noted:

> The fact that Platsky's 2014 FOIA request seeks only a subset of the documents sought in his 2010 request – he sought records from 2001 to 2005 instead of 2001 to 2010 – does not alter the legal issue; the 2001 to 2005 records that he seeks in this action were actually requested in the first action.

(Preska Order, 4-5.) Accordingly, she dismissed his FOIA claims. (Preska Order, 4.) She also dismissed his challenge to the FBI watchlists, noting Platsky's prior case against the Agencies and finding, "as the district court and Court of Appeals previously concluded, Platsky lacks standing to raise a challenge to the No Fly List because he failed to include any plausible allegations in his complaint that his own travel had in any way been delayed or impeded," and

his complaint "includes no allegations suggesting that he has been subjected to any travel restrictions." (Preska Order, 4.)

Platsky appealed the dismissal, and on July 16, 2015, the Second Circuit issued an opinion vacating the judgment of the district court "to the extent that the district court relied on collateral estoppel to dismiss Appellant's complaint." (Mandate of U.S. Court of Appeals, ECF No. 8 ("2d Cir. Opinion").) It explained that Platsky's previous FOIA action addressed requests for records covering the period January 1, 2005, to January 1, 2010, not January 1, 2000, to January 1, 2010, as Judge Preska had concluded. (2d Cir. Opinion.) Thus, the Second Circuit concluded,

> [C]ontrary to the district court's collateral estoppel ruling, the "legal question" of whether the defendants properly issued *Glomar* responses to Appellant's FOIA requests for records between January 1, 2000 and January 1, 2005, which is at issue in this case, was not "actually litigated and decided" in the first FOIA action. Nor was the Appellant's argument that the records he now seeks should be declassified because they are more than ten years old.

(2d Cir. Opinion.)

On remand, the action was re-assigned to this Court. On January 18, 2016, Platsky moved for summary judgment and on January 29, 2016, Defendants cross-moved for summary judgment. (ECF No. 29, 45.) Defendants argue: (1) that the searches they conducted were reasonable and adequate and located no responsive records; (2) that they properly provided *Glomar* responses to the extent that Platsky sought intelligence or watchlist information; and (3) that the dismissal of Platsky's challenge to the watchlist still stands. (Def.'s Mem., ECF No. 30, 1-3.) Platsky does not dispute that the searches conducted were reasonable and adequate, but he argues that the *Glomar* responses were improper and that his challenge to the No Fly List has not

4

been dismissed and he has standing to pursue it. (Pl.'s Reply Opp., ECF No. 39; Pl.'s Reply Supp., ECF No 40.)[1] The Court turns to these arguments now.

## LEGAL STANDARD

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). "However, Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information, and therefore provided the specific exemptions under which disclosure could be refused." *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 397 (S.D.N.Y. 2014) (quoting *John Doe Agency*, 493 U.S. at 152) (internal quotation marks omitted). "FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Id.* (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)). "These exemptions are explicitly made exclusive, and must be narrowly construed." *Id.* (quoting *Milner*, 562 U.S. at 565).

"[S]ummary judgment is the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009). "As with all motions for summary judgment, summary judgment in a FOIA action should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

---

[1] Platsky submitted three filings, styled as: (1) Plaintiff's Motions in Response to Defendants Answer, filed January 21, 2016 (ECF No. 45 ("Pl.'s Mot.")); (2) Plaintiff's Reply to Defendants' Motion for Summary Judgement, filed March 21, 2016 (ECF No. 39 ("Pl.'s Reply Opp.")); and (3) Plaintiff's Reply in Support of Motion for Summary Judgement (ECF No. 40 ("Pl.'s Reply Supp.")).

On one hand, "[f]or an agency to prevail on a summary judgment motion in a FOIA case, it must demonstrate that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements." *New York Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007) (quoting *Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 9 (2d Cir. 1995)) (internal quotation marks omitted). Where an agency has withheld responsive documents pursuant to a FOIA exemption, it may carry its burden to prove the applicability of the claimed exemption by affidavits. *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009). Accordingly,

> [s]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith. Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.

*Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). "Affidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citation omitted). If the agency satisfies that burden, then in order to justify discovery, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Id.* (citations omitted).

On the other hand, "[s]ummary judgment in favor of the FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption . . ." *New York Times*, 499 F. Supp. 2d at 509 (quoting

6

*Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)) (alterations and internal quotation marks omitted).

Finally, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," *Harris v. Miller*, --- F.3d ---, No. 14-2957, 2016 WL 963904, at *4 (2d Cir. Mar. 15, 2016) (quoting *Tracy v. Freshwater,* 623 F.3d 90, 101 (2d Cir. 2010)) (alteration omitted). This is so "particularly where motions for summary judgment are concerned." *Id.* (quoting *Jackson v. Fed. Express,* 766 F.3d 189, 195 (2d Cir. 2014)). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted).

## DISCUSSION

I.  **Adequacy of Searches Performed**

Each Agency has submitted a declaration explaining the searches conducted and the Agency's grounds for refusing to confirm or deny the existence of certain records. (*See* Sherman Decl., ECF No. 31 ("NSA Decl."); Shiner Decl., ECF No. 32 ("CIA Decl."); Hardy Decl., ECF No. 33 ("FBI Decl.").) The Court has reviewed these declarations. Based on the declarations, and on Platsky's own statement that he will "pass by the defendants' assertions that they conducted an adequate search for records concerning an open and acknowledged relationship between [him] and the defendant agencies, as . . . all agree that there has never been such a relationship" (Pl.'s Reply Opp. 1), the Court grants summary judgment to Defendants on the issue of the adequacy of the searches performed.

## II. Use of *Glomar* Exception

The central issue remaining is the propriety of the Agencies' assertion of so-called *Glomar* responses, i.e. responses that neither confirm nor deny the existence of records responsive to Platsky's request. Under the *Glomar* doctrine, "an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception." *Wilner*, 592 F.3d at 68 (alterations, citation, and internal quotation marks omitted). "To properly employ the *Glomar* response to a FOIA request, an agency must tether its refusal to respond to one of the nine FOIA exemptions." *Id.* (alterations and internal quotation marks omitted). "[I]n other words, a government agency may refuse to confirm or deny the existence of certain records if the FOIA exemption would itself preclude the *acknowledgment* of such documents." *Id.* (emphasis in original) (alterations, citation, and internal quotation marks omitted).

An agency resisting disclosure of the requested records bears the burden of proving the applicability of an exemption. *Wilner*, 592 F.3d at 68. "The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions." *Id.* (internal citations and quotation marks omitted). "In evaluating an agency's *Glomar* response, a court must accord substantial weight to the agency's affidavits, provided that the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of bad faith." *Id.* (alterations, citation, and internal quotation marks omitted).

### A. NSA and CIA

The NSA and CIA tether their *Glomar* responses to FOIA Exemptions 1 and 3. "[D]efendants need only proffer one legitimate basis for invoking the *Glomar* response and

FOIA Exemptions 1 and 3 are separate and independent grounds in support of a *Glomar* response." *Wilner*, 592 F.3d at 72. The Court will turn first to Exemption 3.

### 1. Exemption 3

Exemption 3 covers matters "specifically exempted from disclosure by statute," so long as the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). In *CIA v. Sims,* 471 U.S. 159 (1985), the Supreme Court established a two-part framework for reviewing an agency's invocation of Exemption 3: a court must first determine whether the statute designated by the withholding agency is one properly within the bounds of Exemption 3, and then, if it is, the court must then determine whether the withheld information meets the requirements of that statute. *Id.* at 167. "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner*, 592 F.3d at 72.

#### a) *The NSA*

The NSA identifies three withholding statutes within the bounds of Exemption 3: (1) Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605; (2) 18 U.S.C. § 798; and (3) the National Security Act of 1947, as amended by the Intelligence Reform and Terrorist Prevention Act of 2004, 50 U.S.C. § 3024. (Def.'s Mem. 14.) The Court need only consider Section 6 here, as it is sufficient to sustain the *Glomar* response.

"Section 6 states that no law shall be construed to require the disclosure of any information with respect to the activities of the NSA." *Wilner*, 592 F.3d at 73 (citations omitted). "As to the first prong of the *Sims* framework, it is well-established that FOIA Exemption 3

properly encompasses Section 6 of the NSAA." *Roman v. Nat'l Sec. Agency*, No. 07 Civ. 4502 (JFB), 2009 WL 303686, at *5 (E.D.N.Y. Feb. 9, 2009), *aff'd* 354 F. App'x 591 (2d Cir. 2009); *see also id.* (collecting cases). Regarding the second prong—whether the withheld information falls within the ambit of the statute—Defendants offer the declaration of David J. Sherman, Associate Director for Policy and Records at the National Security Agency, in which he describes the primary purposes and activities of the NSA and states that confirming or denying the existence of the records Platsky seeks would threaten the efficacy of the NSA's primary functions. (*See* NSA Decl.)

While "[a]n agency must show not only that the requested records would be exempt from disclosure, but also that the FOIA exemption would itself preclude the acknowledgment even confirming or denying the existence of such documents," *Wilner*, 592 F.3d at 75, "Congress's broad language in section 6 of the NSAA eases that burden for the agency, as it exempts from disclosure any 'information with respect to the activities' of that agency." *Id.* As the Second Circuit explained:

> Confirming or denying the *mere existence* of specific records in a general surveillance program would logically be both confirming or denying that the NSA was targeting a specific individual *and* confirming or denying that the NSA is conducting a general surveillance program. Either disclosure would be information with respect to the activities" of the NSA and therefore exempt under FOIA.

*Id.* While the statute should not be read so broadly as to exempt the NSA entirely from FOIA, *see, e.g., Am. Civil Liberties Union v. Office of the Dir. of Nat. Intelligence*, No. 10 Civ. 4419 (RJS), 2011 WL 5563520, at *9-10 (S.D.N.Y. Nov. 15, 2011), the "very nature of [Platksy's] request—which seeks records concerning whether [his] communications were monitored by the NSA—establishes that *any response* would reveal 'information with respect to the activities' of

the NSA." *Wilner*, 592 F.3d at 75 (emphasis in original). Thus, the NSA's *Glomar* response was appropriate.

### b) The CIA

The CIA identifies two withholding statutes as the basis of its *Glomar* response: (1) Section 102A(i)(1) of the National Security Act, as amended, 50 U.S.C. § 3024; and (2) the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507. (Def.'s Mem. 18.)

First, "Section 102A(i)(1) of the National Security Act of 1947 . . . requires that the Director of National Intelligence protect intelligence sources and methods from unauthorized disclosure." *Florez v. C.I.A.*, No. 14 Civ. 1002 (SHS), 2015 WL 728190, at *8 (S.D.N.Y. Feb. 19, 2015) (citing 50 U.S.C. § 3024(i)(1)). "According to the Supreme Court, 'Congress vested in the Director of Central Intelligence very broad authority to protect all sources of intelligence information from disclosure.'" *Id.* (quoting *Sims,* 471 U.S. at 168-69). Second, "Section 6 of the Central Intelligence Agency Act . . . provides that, 'in the interests of the security of the foreign intelligence activities of the United States and in order further to implement the Director of National Intelligence's responsibility for protecting intelligence sources and methods from unauthorized disclosure, the CIA shall be exempted from the provisions of any law that require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." *Id.* (quoting 50 U.S.C. § 3507) (alterations and internal quotation marks omitted). Both statutes are exempting statutes within the meaning of Exemption 3, satisfying the first prong of the *Sims* framework. *See id.* (collecting cases).

Regarding the second prong—whether the withheld information falls within the ambit of the statute—Defendants offer the declaration of Antoinette B. Shiner, Information Review Officer for the Litigation Information Review Office at the Central Intelligence Agency. (CIA

11

Decl.) She contends that confirming or denying whether the CIA has an intelligence interest in a particular individual would reveal intelligence sources and methods. (*See, e.g.*, CIA Decl. ¶¶ 41, 45, 53-55.) The declaration is sufficiently detailed to show that the requested information logically falls within the claimed exemptions, *see Wilner*, 592 F.3d at 73. Accordingly, the CIA's response is justified under Exemption 3.

### c) *Allegations of Bad Faith*

Platsky acknowledges that the affidavits submitted by an agency are accorded a presumption of good faith, *see Wilner*, 592 F.3d at 69 (quoting *Carney*, 19 F.3d at 812), but he urges the Court to "reconsider its presumption of good faith." (Pl.'s Reply Opp. 3.) In support of this argument, he asserts: (1) that in its declaration, the NSA's representative and "the NSA acts like they have something to hide"; (2) that "the track record of the NSA and the CIA on keeping confined to their legal purview of foreign intelligence is not good": (3) "in the aftermath of the catastrophic events of 911 all three agencies were found guilty of moving free of both legal and moral confinement"; and (4) that various websites purport to detail monitoring, tracking, harassing, and torture of citizens by the three agencies. (Pl.'s Reply Opp. 3-4.)

But allegations grounded in mere speculation are insufficient to rebut the presumption of good faith. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999); *see also Carney* 19 F.3d at 813 (2d Cir. 1994) ("speculative allegations of conspiracy insufficient to justify discovery"). Instead, "a finding of bad faith must be grounded in evidence suggesting bad faith on the part of the agency." *Wilner*, 592 F.3d at 75 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009)). Here, the justifications for nondisclosure are not controverted by any contrary evidence in the record, nor does Platsky present any evidence of bad faith, beyond his own speculative and generalized assertions of wrongdoing on the part of the

12

agencies. This is insufficient to overcome the presumption of good faith. *See id.* at 68. Therefore, the declarations submitted by the NSA and the CIA are accorded the presumption of good faith and because the justifications contained therein appear logical and plausible, their invocations of the *Glomar* doctrine, tethered to Exemption 3, are proper.

### 2. Exemption 1

Because Exemption 3 furnishes a separate and independent ground in support of a *Glomar* response, the Court need not consider the applicability of FOIA Exemption 1. *See, e.g., Ctr. for Constitutional Rights v. C.I.A.*, 765 F.3d 161, 164 n. 6 (2d Cir. 2014), cert. denied, 135 S. Ct. 1530, 191 L. Ed. 2d 559 (2015); *Wilner*, 592 F.3d at 72 (2009). Thus, the Court need not consider Plaintiff's argument that the records he seeks are no longer classified because they are older than ten years. (*See* Pl.'s Mot., 1-2.)

### B. FBI

The FBI tethers its *Glomar* response to FOIA Exemption 7(E). This exemption applies to "records or information compiled for law enforcement purposes," that if made public "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

In support, the FBI submits the declaration of David M. Hardy, the Section Chief of the Record/Information Dissemination Section, Record Management Division, of the FBI. (FBI Decl.) The FBI asserts that, "[g]iven the sensitive information contained in the watchlist, the mere acknowledgement of the existence or non-existence of responsive records would trigger harm," as "revealing this fact alone could enable targets of the watchlist to avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use this important

law enforcement technique, therefore allowing circumvention of the law." (FBI Decl. ¶ 26.) The FBI further asserts that the specific criteria for "nomination" to the list cannot be made public without "compromising intelligence and security or inviting subversion of these lists by individuals who will seek ways to adjust their behavior to avoid being identified as a threat to aviation. Thus, the success of this antiterrorism tool depends in part on the confidentiality of the protocols for inclusion on a No-fly list." (FBI Decl. ¶ 27.)

The information contained in the declaration is logical and plausible, and thus it is sufficient to establish that the FBI's *Glomar* response was proper. *See Wilner*, 592 F.3d at 73. As discussed above, Platsky does not rebut the presumption of good faith. That the existence of the No Fly List is public knowledge and that some people on the No Fly List come to know of their presence on it does not change the Court's analysis, contrary to Platsky's arguments. (Pl.'s Reply Supp. 2.) This is because "Exemption 7(E) applies even when the identity of the techniques has been disclosed, but the manner and circumstances of the techniques are not generally known, or the disclosure of additional details could reduce their effectiveness." *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 391 (S.D.N.Y. 2014) (quoting *Council on American–Islamic Relations, Cal. v. F.B.I.*, 749 F.Supp.2d 1104, 1123 (S.D. Cal. 2010)); *see also Platsky v. Nat'l Sec. Agency*, No. 11 Civ. 4816, Docket No. 20 (E.D.N.Y. Jan. 30, 2013) (citing *Skurow v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 319 (D.D.C. 2012)). As did the Second Circuit when confronted with Platsky's previous FOIA request to the FBI, this Court concludes that "the FBI properly tethered its *Glomar* response to Exemption 7(E), which protects information compiled for law enforcement purposes." *Platsky v. Nat'l Sec. Agency*, 547 F. App'x 81, 82 (2d Cir. 2013).

### III.    Challenge to No-Fly List

As to Platsky's challenge to the constitutionality of the No Fly List, it appears that the Second Circuit left Judge Preska's dismissal of that claim undisturbed. Platsky had argued,

relying on *Latif v. Holder*, 28 F. Supp. 3d 1134 (D. Or. 2014), that placement on the No Fly List violated "the right to due process to those whose names appear on said lists." (Compl. 7.) But as discussed above, Judge Preska dismissed this claim for lack of standing. The Second Circuit did not address this claim, but did state, "[T]he judgment of the district court is VACATED *to the extent the district court relied on collateral estoppel to dismiss Appellant's complaint*." (2d Cir. Opinion) (emphasis added). Thus, it left undisturbed Judge Preska's ruling dismissing Platsky's No Fly List claim on standing grounds, as that ruling was unrelated to collateral estoppel.

Even if Platsky's constitutional challenge had been resurrected, the Court would now have to dismiss it for lack of standing. This Court adopts the reasoning articulated by the Second Circuit in response to Platksy's challenge to the No Fly List in his previous action:

> [W]e also note Platsky's argument that the FBI may not, consistent with due process, place him or any citizen on a terrorist watch list without notice and an opportunity to be heard. As to this claim, we agree with the District Court's determination the Platsky does not have standing, because he appears to be claiming a hypothetical and speculative injury. "The irreducible constitutional minimum requires that (1) the plaintiff have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) the injury be fairly traceable to the challenged action of the defendant, and (3) it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Hedges v. Obama*, 724 F.3d 170, 188 (2d Cir.2013) (internal quotation marks omitted). Platsky does not allege that he has in fact been put on an FBI watch list, or even that he has been inordinately subjected to heightened searches while traveling, which could raise a plausible inference that he had been placed on such a list. Accordingly, he does not have standing to assert a due process claim.

*Platsky v. Nat'l Sec. Agency*, 547 F. App'x 81, 82-83 (2d Cir. 2013). Further, as the Second Circuit noted:

> Even if Platsky had an articulable injury, a FOIA request would not be the proper means to bring a due process challenge. Congress has mandated the creation of "a timely and fair redress process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat," *see* 49 U.S.C. § 44926, in response to which the Department of Homeland Security created a Redress Program. *See Shearson v. Holder*, 725 F.3d 588, 590–91 (6th Cir. 2013) (describing Redress Program procedures for challenging inclusion on FBI's

15

terrorist watch list). This opinion in no way restricts Platsky's right to pursue his administrative remedies through the Redress Program.

*Platsky v. Nat'l Sec. Agency*, 547 F. App'x 81, 83 n. 1 (2d Cir. 2013). As to the present action, though, his constitutional challenge cannot stand.

### IV. Other Requested Relief

Finally, in his filings, Platsky requests additional relief. First, he requests that the Court "order the Department of Justice to inspect the files of all three defendants to insure that they are not violating" an executive order (Pl.'s Mot. 2-3). Second, he asks that the Court determine if the "role of the Office of the United States Attorney in defending possible participants in a civil rights conspiracy [could be found] to be a conflict of interest," a request growing out of Platsky's denied request to the Department of Justice's Civil Rights Division that it investigate certain federal and New York City agencies. (Pl.'s Reply Supp. 3-4.)

The first of these requests is outside the scope of relief permitted under FOIA. "When, as here, a court finds that the government's public affidavits sufficiently allege the necessity of a *Glomar* response, *ex parte* and *in camera* review of additional, confidential material is unnecessary and beyond the role assigned to the judiciary by applicable law." *Wilner*, 592 F.3d at 76. It follows that it is beyond the role assigned to the judiciary to order an executive agency to perform such review on its behalf.

The second of these requests is irrelevant to the present action. Platsky's conflicts with the New York City Police Department, the United States Postal Service, the New York City Taxi and Limousine Commission, and the New York City Human Resources Administration have no bearing on his request for documents from the Agencies here. To the extent that Platsky alleges that the Department of Justice failed to investigate his allegations against those agencies due to its role in the present case, this is not the appropriate juncture at which to raise such claims. "A

16

claim must be set forth in the pleadings in order to give defendants fair notice of the nature of the plaintiff's claim." *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (citing Fed. R. Civ. P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Thus, it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion." *Id.* (citation omitted). The Court accordingly declines to address any further Platsky's new claims.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

**Dated:** July 1, 2016
New York, New York

ANDREW L. CARTER, JR.
**United States District Judge**